NOT YET SCHEDULED FOR ORAL ARGUMENT

———————————

No. 13-7196

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

WILMA ELEY,

APPELLEE,

V.

DISTRICT OF COLUMBIA,

APPELLANT.

———————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**BRIEF FOR APPELLANT DISTRICT OF COLUMBIA**

———————————

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

RICHARD S. LOVE
Senior Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 724-6635
Richard.Love@dc.gov

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

A. *Parties and amici*.—The plaintiff below and appellee here is Wilma Eley. The defendant below and appellant here is the District of Columbia.  There are no amici.

B. *Ruling under review*.—The District of Columbia appeals from the November 20, 2013, memorandum opinion and order (Howell, J.) awarding Ms. Eley attorney's fees in the amount of $62,225.  (ECF Docket No. 41).

C. *Related cases*.—To the undersigned counsel's knowledge, this case has not been before any court except the district court below, and there are no related cases.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES ..............................................................1

STATEMENT OF THE CASE...................................................................1

    1.    The Administrative Proceedings. ...........................................2

    2.    The District Court Merits Proceedings. ................................4

    3.    The Attorney's Fee Litigation. ..............................................6

        a.    The fee dispute. ...........................................................6

        b.    Magistrate Judge Kay's Report and Recommendation................8

        c.    The district court's decision employing the enhanced *Laffey* matrix. ....................................................9

STANDARD OF REVIEW ......................................................................12

SUMMARY OF ARGUMENT...............................................................12

ARGUMENT .........................................................................................14

    I.    Ms. Eley Failed To Satisfy Her Burden To Demonstrate That The Claimed Hourly Rate Was In Line With Prevailing Local Rates For IDEA Cases.......................................................14

        A.    The fee applicant bears the burden of establishing a reasonable hourly rate in line with those prevailing in the community for similar services by comparable lawyers. .........14

        B.    Ms. Eley failed to submit any evidence of the prevailing local rates for IDEA cases.......................................16

    II.    The District Court Erred By Applying An Enhanced *Laffey* Rate Instead Of The Prevailing Rate In The District For IDEA Cases. ......18

A.    The district court did not, and indeed could not, find that $625 per hour is the prevailing rate for cases brought under IDEA in the District of Columbia. ...................................18

B.    The district court's other rationales are unavailing ..................22

CONCLUSION ......................................................................................................27

## TABLE OF AUTHORITIES*

### *Cases*

*A.S. v. District of Columbia*, 842 F. Supp. 2d 40 (D.D.C. 2012) ............................21

*B.R. v. District of Columbia*, 802 F. Supp. 2d 153 (D.D.C. 2011) ..........................20

*\*Blum v. Stenson*, 465 U.S. 886 (1984) ................................... 10, 14, 15, 17, 23, 24

*Bucher v. District of Columbia*, 777 F. Supp. 2d 69 (D.D.C. 2011) .......................20

*Carter v. District of Columbia*, 894 F. Supp. 2d 46 (D.D.C. 2012) ........................20

*Conservation Force v. Salazar*, 699 F.3d 538 (D.C. Cir. 2012) ..............................12

*Copeland v. Marshall*, 594 F.2d 244 (D.C. Cir. 1978) ............................................15

*\*Covington v. District of Columbia*, 57 F.3d 1101
(D.C. Cir. 1995) ....................................................................... 14, 15, 17, 22, 24, 25

*Cox v. District of Columbia*, 754 F. Supp. 2d 66 (D.D.C. 2010) ............................21

*Davis v. District of Columbia*, 864 F. Supp. 2d 110 (D.D.C. 2012) .......................20

*Eureka Inv. Corp., N.V. v. Chi. Title Ins. Co.*, 743 F.2d 932 (D.C. Cir. 1984) .........15

*Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149 (D.D.C. 2012) .........21

*Gardill v. District of Columbia*, 930 F. Supp. 2d 35 (D.D.C. 2013) .......................20

*Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011) ........................22

*Interfaith Community Organization v. Honeywell International, Inc.*,
726 F.3d 403 (3d Cir. 2013) ...................................................................................19

*Jackson v. District of Columbia*, 696 F. Supp. 2d 97 (D.D.C. 2010) .....................21

---

*    Authorities upon which we chiefly rely are marked with asterisks.

*Johnson v. District of Columbia*, 850 F. Supp. 2d 74 (D.D.C. 2012) .....................20

*Kattan by Thomas v. District of Columbia*, 995 F.2d 274 (D.C. Cir. 1993) ...........12

*McClam v. District of Columbia*, 808 F. Supp. 2d 184 (D.D.C. 2011)...................20

*Parks v. District of Columbia*, 895 F. Supp. 2d 124 (D.D.C. 2012) .......................19

*Pennsylvania v. Del. Valley Citizens Council for Clean Air*,
478 U.S. 546 (1986)........................................................................................25

*\*Pennsylvania v. Del. Valley Citizens Council for Clean Air*,
483 U.S. 711 (1987)........................................................................................21

*\*Perdue v. Kenny A.*, 559 U.S. 542 (2010) .................................................. 8, 14, 21

*Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011) ....... 9, 17, 20, 26

*Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000) ........................18

*Santamaria v. District of Columbia*, 875 F. Supp. 2d 12 (D.D.C. 2012)................19

*Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516
(D.C. Cir. 1988)...................................................................... 10, 23, 24

*Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006) .......................18

*Thomas v. District of Columbia*, 908 F. Supp. 2d 233 (D.D.C. 2012)....................25

*Watson v. Cnty. of Riverside*, 300 F.3d 1092 (9th Cir. 2002) ....................................1

## Statutes and Regulations

20 U.S.C. § 1400.........................................................................................................2

20 U.S.C. § 1415(i)(3)(B)(i)(I) ...............................................................................14

*20 U.S.C. § 1415(i)(3)(F)(ii)............................................................ 14, 19, 24

28 U.S.C. § 1291 .........................................................................................................1

28 U.S.C. § 1331 ...................................................................................1

**GLOSSARY**

| | |
|---|---|
| DCPS | District of Columbia Public Schools |
| IDEA | Individuals with Disabilities Education Act |
| IEP | Individualized Educational Program |
| Learning Community | The Learning Community International at School Finders |
| USAO | District of Columbia United States Attorney's Office |

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this case under 28 U.S.C. § 1331. This Court has jurisdiction of this appeal under 28 U.S.C. § 1291 because it is an appeal from a post-judgment attorney's fee award. *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1095 (9th Cir. 2002). The order in question was entered on November 20, 2013, and the District of Columbia timely noted an appeal on December 19, 2013.

## STATEMENT OF THE ISSUES

1. Whether Wilma Eley satisfied her burden of proving the reasonableness of the hourly rate she requested where she failed to submit evidence that it was in line with the prevailing rate in the District of Columbia for cases brought under the Individuals with Disabilities Education Act?

2. Whether the district court misapplied the law in its award of attorney's fees where it applied an hourly rate that unreasonably exceeds the rate prevailing in the District for similar cases brought by attorneys of comparable skill, reputation, and experience?

## STATEMENT OF THE CASE

Courts in this jurisdiction commonly award attorney's fees using matrices that suggest prevailing rates for particular types of legal practice based on how many years an attorney has practiced and when the work at issue was performed. The district court here awarded attorney's fees based on its finding that the

enhanced "*Laffey*" matrix was an appropriate measure of prevailing market rates, even though the rate applied using that matrix is at least $180 higher than any hourly rate previously approved by local courts in cases that, like this one, were brought in the District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  This appeal followed.

1.      **The Administrative Proceedings.**

During the 2009-2010 school year, R.E. attended Community Academy Public Charter School pursuant to an Individualized Educational Program ("IEP") developed on August 20, 2009, which noted that he suffers from multiple disabilities.  Doc. 9-1 at 6-7.  After that school year, R.E. matriculated out of the charter school, which serves students only through the end of the eighth grade. Doc. 22 at ¶ 8.  Consequently, Ms. Eley enrolled R.E. as a "non-attending" student at his neighborhood District of Columbia Public Schools ("DCPS") school on August 17, 2010.  Doc. 9-1 at 10.  On September 6, she unilaterally enrolled R.E. at The Learning Community International at School Finders ("Learning Community"), an unaccredited school.  Doc. 9-1 at 11.

On September 13, 2010, Ms. Eley filed a due process complaint with the District of Columbia Office of the State Superintendent for Education, alleging that DCPS had violated IDEA by failing to provide a full-time special education placement for her child, R.E.  Doc. 9-4 at 140.  She sought an order requiring

2

DCPS to reimburse her for the costs she incurred providing for R.E.'s education at his new school, and requiring DCPS to fund R.E.'s prospective education there. Doc. 9-4 at 140; Doc. 9-6 at 38.  At the time Ms. Eley filed her complaint on September 13, DCPS was 23 days late in reviewing R.E.'s IEP .  Doc. 9-1 at 10. On October 7, DCPS identified the Monroe School, an approved non-public day school, as a placement where R.E.'s IEP could be implemented.  Doc. 9-1 at 12; Doc. 9-5 at 167, 177.

A due process hearing was convened before Hearing Officer James Gerl on October 13, at which Ms. Eley presented four witnesses and submitted seven exhibits.  Doc. 9-6 through 9-10.  The resulting Hearing Officer Determination, issued on November 10, denied Ms. Eley's requests for both reimbursement and prospective funding.  Doc. 9-1 at 3-34.  The hearing officer found that the August 20, 2009 IEP provides for a full-time special education placement for R.E. because placement means "the core components of an educational program," which is "separate and distinct from the location at which the services will be delivered." Doc. 9-1 at 17-18.  Further, the hearing officer found that although DCPS's failure to conduct a timely review and update of R.E.'s IEP constituted a procedural violation under IDEA, Ms. Eley failed to demonstrate "that the 23-day period without an IEP either impeded [R.E.'s] right to a free and appropriate public education or significantly impaired [Ms. Eley's] opportunity to participate in the

3

process or caused a deprivation of educational benefits." Doc. 9-1 at 21-22. Finally, the hearing officer found that even if a free and appropriate public education had been denied, the "equities of the facts of this case compel a conclusion that [Ms. Eley] should not receive reimbursement for a unilateral placement." Doc. 9-1 at 23-24. That is because, in the hearing officer's view, Ms. Eley "intended to deceive [DCPS] concerning where [R.E.] would be attending school for the 2010-2011 school year" and her "actions in this regard were unreasonable." Doc. 9-1 at 24. He found that Ms. Eley "appears to have intentionally made it unclear where [R.E.] would be attending school for the 2010-2011 school year by registering him as non-attending and by refusing to answer legitimate inquiries as to where he would be attending." Doc. 9-1 at 24.

**2.      The District Court Merits Proceedings.**

On February 7, 2011, Ms. Eley challenged the hearing officer's determination in a five-page district court complaint for injunctive and declaratory relief. Doc. 1. She sought reimbursement for the costs she incurred providing for R.E.'s education at Learning Community and an order that DCPS fund R.E.'s prospective education there. Doc. 5 at 5. On July 1, the parties filed a joint report indicating that discovery was not needed and that the matter could be resolved by dispositive motions. Doc. 7. On October 7, 2011, Ms. Eley filed a motion for summary judgment; she did not submit any additional evidence, relying instead on

4

the administrative record, Doc. 9, which had been filed with the court on August

23.  Doc. 11.  On November 7, DCPS filed a cross-motion for summary judgment.

Doc. 12.

On August 1, 2012, Magistrate Judge John M. Facciola issued a report that

recommended granting in part and denying in part Ms. Eley's motion for summary

judgment and denying DCPS's cross-motion for summary judgment.  Doc. 20.  He

concluded "that both the failure of DCPS to update R.E.'s IEP in a timely manner

and its decision to place R.E. at Monroe without input from [Ms. Eley] caused

substantive harm to R.E. and denied him FAPE in violation of [IDEA]."  Doc. 20

at 12.  He found that an "IEP must contain a location where the services will be

provided" and that DCPS's failure both to provide a timely annual IEP update and

a particular school for R.E. to attend was not harmless because R.E., "despite his

severe disabilities, had no school to attend when the school year began."  Doc. 20

at 14.  The magistrate judge also found that "DCPS unilaterally updated R.E.'s IEP

for the 2010-2011 school year when it proposed [the Monroe School] as the

location for R.E.'s IEP to be implemented" and that Ms. Eley was not "included in

any IEP team meeting after" August 2009.  Doc. 20 at 15-16.  In his view, Ms.

Eley's exclusion from the 2010-2011 IEP update process also violated R.E.'s right

to a free and appropriate public education.  Doc. 20 at 16.  He also found that Ms.

Eley was not being deceptive when she told her neighborhood school that she did

5

not know what school R.E. would be attending and that her actions and conduct were not unreasonable.  Doc. 20 at 19.  Therefore, Magistrate Judge Facciola recommended remanding the case to permit the hearing officer to determine whether the $2,850 in tuition costs Ms. Eley paid to Learning Community was reasonable.  Doc. 20 at 19.  However, he found that prospective funding to place R.E there was not appropriate.  Doc. 20 at 19.  Instead, he found that prospective placement should be addressed by DCPS's multi-disciplinary/IEP team.  Doc. 20 at 20.

On August 24, 2012, Judge Beryl A. Howell adopted Magistrate Judge Facciola's Report and Recommendation in full.  Doc. 21.

On November 21, a hearing officer found that Ms. Eley was entitled to $2,850 in reimbursement for her unilateral placement of R.E. at Learning Community between September 7, 2010 and October 31, 2010.  Doc. 26-8 at 8.

**3.      The Attorney's Fee Litigation.**

**a.      The fee dispute.**

On January 18, 2013, Ms. Eley filed a motion for attorney's fees and costs. Doc. 26.  She sought an award of $62,225 based on 97.5 hours of work at an hourly billing rate of $625 per hour, plus 3 travel hours billed at $312.50 per hour, and a $350 federal filing fee.  Doc. 26 at 9; Doc. 26-2 at 3; Doc. 26-3 at 2 ¶ 8.  Her attorney's statement indicated that his hourly billing rate matched those in an

enhanced *Laffey* matrix, that he had clients who paid those rates directly, and that his bill here looks substantially like the itemizations he used in hundreds of other cases for IDEA attorneys' fees involving DCPS, including two large groups of bills that DCPS settled at over 90 percent of what was billed. Doc. 26-3. Along with a copy of the enhanced matrix, which Ms. Eley submitted as evidence of prevailing market rates, she submitted a declaration from Michael Kavanaugh, an economist, who explained that he arrived at the enhanced *Laffey* matrix by adjusting the rates set forth in the 1989 *Laffey* matrix using a nation-wide legal services index, which he believed provided an "accurate estimate of current billing rates." Doc. 26-5 at 21. In contrast, the *Laffey* matrix released by the District of Columbia United States Attorney's Office ("USAO") adjusts the rates set forth in the 1981-1982 *Laffey* matrix based on "an inflation calculation based upon the Washington, D.C. metropolitan area [Consumer Price Index] for all goods and services." Doc. 41 at 17. The USAO *Laffey* rate applicable here is $445 per hour, $180 per hour less than the enhanced *Laffey* rate.[1]

The District filed an opposition to the motion for fees and costs on February 4, 2013. Doc. 27. Among other grounds, it argued that Ms. Eley had failed to demonstrate that her attorney's hourly rates are reasonable. Doc. 27 at 11-15.

---

[1]     The USAO *Laffey* matrix is available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.

First, it observed that the Supreme Court has "determined that a reasonable fee is

'a fee that is sufficient to induce a capable attorney to undertake the representation

of a meritorious . . . case.'" Doc. 27 at 11-12 (citing *Perdue v. Kenny A.*, 559 U.S.

542, 552 (2010)). Second, the District cited over 40 local district court cases in

which an award for IDEA attorneys' fees was based on USAO *Laffey* rates or rates

equal to 75 percent of USAO *Laffey* rates. Doc. 27 at 12-13. In light of those

precedents, the District argued that enhanced *Laffey* rates neither accord with

prevailing community rates for IDEA cases nor are necessary to induce a capable

attorney to undertake representation in similar cases. Doc. 27 at 12-15. In arguing

for a lower hourly rate, the District also noted that in *Perdue* the Supreme Court,

while acknowledging the important public purpose served by fee-shifting statutes,

cautioned that in suits against governmental entities:

> the fees are paid in effect by state and local taxpayers, and because
> state and local governments have limited budgets, money that is used
> to pay attorney's fees is money that cannot be used for programs that
> provide vital public services.

559 U.S. at 559 (citation omitted).

> **b.    Magistrate Judge Kay's Report and Recommendation.**

On August 29, Magistrate Judge Alan Kay issued a report that recommended

granting Ms. Eley a total of $40,620.32 in fees and costs. Doc. 34 at 1-11. He

recommended an hourly rate that was equal to 75 percent of USAO *Laffey* rates.

Doc. 34 at 10. He rejected the use of the enhanced *Laffey* matrix, indicating that

8

none of the cases Ms. Eley relied upon in her motion to support "an elevated hourly rate" involved an IDEA case.  Doc. 34 at 9.

The magistrate judge also noted that the USAO *Laffey* matrix "was created to follow rates charged by litigators who practice complex federal litigation" and that in other local IDEA cases district court judges had awarded 75 percent of the USAO *Laffey* rate.  Doc. 34 at 9.  He in particular relied on *Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011), where the court stated:

> This litigation does not much resemble the sort of complicated cases in which a plaintiff's counsel is appropriately awarded fees at the maximum allowable rate.  Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law.

Doc. 34 at 9 (quoting *Rooths*, 802 F. Supp. 2d at 62-63).  The magistrate judge found that "no evidence exists that the hearing or judicial appeal presented novel legal issues or were significantly more complex than most [IDEA] cases," but instead "the number of exhibits and witnesses indicates that this case was a routine administrative hearing and judicial appeal."  Doc. 34 at 10.

### c.   The district court's decision employing the enhanced *Laffey* matrix.

The parties objected to Magistrate Kay's Report and Recommendation (Doc. 35-40) and on November 20, 2013, Judge Howell awarded Ms. Eley the full amount she had requested, $62,225, applying the enhanced *Laffey* rate of $625 per hour.  Doc. 41 at 42.

9

The court recognized that the "princip[al] dispute about the reasonableness of the requested attorney's fee in this case is over . . . the prevailing market rate in this community."  Doc. 41 at 13.  In assessing "which version of the *Laffey* matrix is appropriate to use" here, Doc. 41 at 14, the court found that the enhanced *Laffey* matrix was a more accurate reflection of the costs of legal services in the District and nationwide than the USAO *Laffey* matrix.  Doc. 41 at 21-22.  While acknowledging that the enhanced *Laffey* matrix may be indicative only of prevailing market rates for major law firms engaged in complex federal litigation, the court found that differentiating rates on this basis "has been explicitly rejected by" cases applying prevailing market rates to public interest legal service organizations and private, for-profit law firms that charge reduced rates for certain types of litigation.  Doc. 41 at 22-23 (citing *Blum v. Stenson*, 465 U.S. 886, 889 (1984); *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) ("*Cumberland Mountains*")).  The court found it would be anomalous to award a major law firm that took an IDEA case enhanced *Laffey* rates but to deny that rate to a small firm practitioner who specializes in IDEA cases, particularly where that practitioner, as here, declares that his customary hourly rate has always matched the enhanced *Laffey* rates and that he has had some clients that have paid that rate directly to the firm.  Doc. 41 at 23-24.  For those reasons, the court found that the enhanced *Laffey* "rates are an appropriate measure

of the prevailing community rates for attorneys in the Washington, D.C. area." Doc. 41 at 24. The court recognized the concern, expressed by other courts, that payment of the award would "come from the public fisc," but concluded that it was not a legally cognizable basis for "reducing an attorney's fee award in civil rights litigation." Doc. 41 at 25.

Having determined that the enhanced *Laffey* rates were an appropriate measure of prevailing community rates, the court next considered whether it "should exercise its discretion and apply that rate here." Doc. 41 at 25. The court found that a determination of the complexity of a case is "not the dispositive question as to whether [enhanced *Laffey*] rates apply." Doc. 41 at 29. Even if it was, the court reasoned that IDEA cases can be complex and complexity is "accounted for by the number of hours expended and should not be accounted for by a blunt reduction of rates before applying the rates to the number of hours expended." Doc. 41 at 31. Setting aside complexity, the court concluded that "the defendant has not explained why litigating federal IDEA cases generally, or this case in particular, should warrant a reduction of twenty-five percent from the prevailing market rate compared to litigating of other civil rights cases with fee-shifting provisions." Doc. 41 at 33.

The District timely appealed the fee award.

## STANDARD OF REVIEW

This Court generally reviews a district court's award of attorney's fees and costs for abuse of discretion.  *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).  A "district court abuses its discretion if it did not apply the correct legal standard . . . or if it misapprehended the underlying substantive law" and "[i]n such instances the [C]ourt must examine de novo whether the district court applied the correct legal standard."  *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012) (internal quotation marks omitted).

## SUMMARY OF ARGUMENT

Ms. Eley—who bears the burden of proof—submitted no evidence that the enhanced *Laffey* rates she requested are in line with those in the District of Columbia for similar IDEA cases brought by attorneys of comparable skill, reputation, and experience.  The fee matrix she submitted does not measure, and is not germane to, local IDEA cases, and without any affidavit from another attorney attesting to charging and receiving similar rates for comparable IDEA cases or other evidence demonstrating prevailing market rates, Ms. Eley's attorney's statement, even if it was properly supported, is insufficient to satisfy her burden of proof.

Even if Ms. Eley had presented sufficient evidence to satisfy her burden, the district court did not—and indeed could not—find that the enhanced *Laffey* matrix

12

is a reasonable measure of prevailing community rates for local IDEA cases. While the court found that the enhanced *Laffey* matrix more accurately accounted for inflation, it failed to address whether the enhanced *Laffey* rates are in line with those prevailing in the District in IDEA cases.  Enhanced *Laffey* rates have never been awarded in a local IDEA case; instead the rates awarded in over forty IDEA cases cited by the District were at least $180/hour less than the $625/hour enhanced *Laffey* rate the district court awarded here.  Fees awarded under IDEA may not unreasonably exceed the hourly rate prevailing in the District in similar IDEA cases given the Supreme Court's recognition that the rate awarded should be based on what is sufficient to induce a capable attorney to undertake the representation of a meritorious case.  Given the significantly lower rates awarded in such a large number of IDEA cases, the enhanced *Laffey* matrix is not a reasonable measure of market rates for local IDEA cases and the higher enhanced *Laffey* fees are not required to attract competent counsel to prosecute such cases.

# ARGUMENT

I.   **Ms. Eley Failed To Satisfy Her Burden To Demonstrate That The Claimed Hourly Rate Was In Line With Prevailing Local Rates For IDEA Cases.**

   A.   **The fee applicant bears the burden of establishing a reasonable hourly rate in line with those prevailing in the community for similar services by comparable lawyers.**

In any IDEA action, a district court, "in its discretion, may award reasonable attorneys' fees as part of the costs" "to a prevailing party who is a parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). A claim for attorneys' fees must be reduced whenever it "unreasonably exceeds the amount of the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience." 20 U.S.C. § 1415(i)(3)(F)(ii).

"[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. The fee must be "adequate to attract competent counsel, but . . . not produce windfalls to attorneys." *Blum*, 465 U.S. at 893-94. A "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the [hourly] rates." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Moreover, "[s]pecial caution" is required when fees would be charged to the government "'because of the incentive which the [government's] 'deep pocket' offers to attorneys to inflate

14

their billing charges and to claim far more as reimbursement then would be sought or could reasonably be recovered from most private parties." *Eureka Inv. Corp., N.V. v. Chi. Title Ins. Co.*, 743 F.2d 932, 941-42 (D.C. Cir. 1984) (quoting *Copeland v. Marshall*, 594 F.2d 244, 250 (D.C. Cir. 1978)).

"[E]stablishing a reasonable hourly rate entails a showing of at least three elements," one of which is "the prevailing market rates in the relevant community." *Id*.   Fee applicants must "produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11.   A fee applicant may point to a fee matrix to demonstrate prevailing market rates. *Covington*, 57 F.3d at 1109.   Fee matrices, while "somewhat crude," are "a useful starting point" that can be supplemented with, among other evidence, "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts." *Id*.   If a fee applicant meets her burden of demonstrating that the claimed hours and rates are reasonable, the government then may use similar types of evidence to demonstrate the appropriateness of a lower rate. *Id*. at 1109-10.

**B.      Ms. Eley failed to submit any evidence of the prevailing local rates for IDEA cases.**

Ms. Eley failed to submit any evidence that the enhanced *Laffey* rates she requested are in line with the prevailing District rates for IDEA cases.  Instead, Ms. Eley's attorney claimed that his hourly rate was "presumptively reasonable" because it was his customary billing rate and is "perfectly in line with" the rates set forth in the enhanced *Laffey* matrix.  Doc. 26 at 7-8.  But as the magistrate judge found—and this Court should conclude—there is no evidence that enhanced *Laffey* rates are warranted in IDEA cases generally or in this case specifically.  In her briefs below, Ms. Eley cited four cases that approved the use of the enhanced *Laffey* matrix (Doc. 26 at 8), but none of them involve the IDEA.  Doc. 34 at 9.  And while she argues that the matrix she submitted updates rates based on more relevant data (Doc. 26 at 8), she failed to submit any evidence as to how the enhanced *Laffey* matrix is germane to the prevailing rate for actions brought under IDEA.  Ms. Eley's mere submission of the enhanced *Laffey* matrix, without more, is insufficient to demonstrate that the rates it sets forth conform to the prevailing rates for lawyers bringing IDEA cases in the District of Columbia.

Nor is the rate that Ms. Eley's attorney customarily charges, and occasionally receives from his clients, evidence of prevailing local rates in IDEA cases.  Her attorney's statement that he "has had" clients who have paid his firm enhanced *Laffey* rates is unsupported and conclusory.   Doc. 26-3 at 2 ¶ 9.

16

Moreover, he does not specify how many of his firm's clients, out of the "over 1,000" IDEA cases it has handled, have paid the enhanced rate.  Doc. 26-3 at 3 ¶ 14.  Thus, it cannot be determined whether the enhanced *Laffey* rate is the standard rate for the firm's paying clients, or an outlier (as the careful phrasing of the statement that he "has had" such clients suggests).

Ms. Eley's attorney also states that DCPS twice settled a large group of his firm's bills at over 90 percent of the billed amount.  Doc. 26-3 at 2-3 ¶ 11.  However, his statement provides no evidence that these bulk settlements were based on, let alone established, a prevailing market rate.  *See Rooths*, 802 F. Supp. 2d at 62 ("[T]he amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces . . . .").  That is especially so with regard to these settlements: because both were subject to a fee cap, what the claimed hourly rate was made no difference, and so DCPS had no reason to quibble with that rate.  Doc. 26-3 at 3 ¶ 11; Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, § 814, 123 Stat. 524, 697-98 (2009) (establishing fee cap).

Furthermore, even if her attorney's statement was properly supported, it alone is insufficient.  *Blum*, 465 U.S. at 896 n.11; *Covington*, 57 F.3d at 1107.  Ms. Eley did not submit an affidavit from any other attorney attesting to charging and receiving a similar rate in comparable IDEA cases or any other evidence sufficient to demonstrate that the rate she seeks is the prevailing local rate for IDEA cases.

17

She thus did not make a record sufficient to support the necessary finding that the rate she requested was in line with prevailing local rates for cases of this type.

## II. The District Court Erred By Applying An Enhanced *Laffey* Rate Instead Of The Prevailing Rate In The District For IDEA Cases.

### A. The district court did not, and indeed could not, find that $625 per hour is the prevailing rate for cases brought under IDEA in the District of Columbia.

Even if Ms. Eley had submitted appropriate evidence, the district court did not find—and, indeed, could not find—that the enhanced *Laffey* matrix was a reasonable measure of the rates prevailing in the District of Columbia for cases brought under IDEA. Instead, it found that the enhanced *Laffey* matrix was a reasonable measure of legal services *generally*, not IDEA cases specifically. Doc. 41 at 21-22. While the district court determined that it was more appropriate to apply the enhanced *Laffey* rates because it found that it more accurately accounted for inflation (Doc. 41 at 21-22), the court failed to address whether the enhanced *Laffey* rates are in line with those prevailing in the District in IDEA cases, let alone conclude as much.

None of the cases referenced by the court as having awarded enhanced *Laffey* rates was an IDEA case. Doc. 41 at 17-18 (citing cases). *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), is a class action case concerning medical services and assistance provided by the District of Columbia pursuant to Title 19 of the Social Security Act (Medicaid). *Smith v. District of Columbia*, 466

18

F. Supp. 2d 151 (D.D.C. 2006), was a substantive due process case, and *Interfaith Community Organization v. Honeywell International, Inc.*, 726 F.3d 403 (3d Cir. 2013), was a citizen's suit brought under the Resources Conservation and Recovery Act seeking the cleanup of a contaminated area.

But IDEA itself specifies that a fee award should be reduced if it "unreasonably exceeds the amount of the *hourly rate prevailing in the community for similar services* by attorneys of reasonably comparable skill, reputation, and experience." 20 U.S.C. § 1415(i)(3)(F)(ii) (emphasis added). "Similar services" means just that—IDEA cases, not Medicaid cases or environmental cases. The court's rejection of IDEA litigation as a separate market (Doc. 41 at 29) is inconsistent with IDEA itself.

And the district court discounted the *forty* cases cited by the District that awarded rates in IDEA cases that were at least $180/hour less than the $625/hour enhanced *Laffey* rate it awarded here without addressing why the rates in those cases do not establish the prevailing local rate for IDEA cases. *See* Doc. 27 at 12-13 (citing, *e.g.*, *Santamaria v. District of Columbia*, 875 F. Supp. 2d 12, 21 (D.D.C. 2012) (finding plaintiffs failed to establish USAO *Laffey* rates as the prevailing market rates and awarding lower DCPS guideline rates in a routine IDEA case); *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 130-32 (D.D.C. 2012) (recognizing that "IDEA proceedings may in appropriate circumstances warrant

19

fees equal to or near the [USAO] *Laffey* rate" but only 75 percent of that rate in cases "of only modest intricacy"); *Carter v. District of Columbia*, 894 F. Supp. 2d 46, 53 (D.D.C. 2012) (finding USAO *Laffey* rates are the presumed maximum for complex federal litigation and awarding 75 percent of those rates); *Davis v. District of Columbia*, 864 F. Supp. 2d 110, 117-19 (D.D.C. 2012) (same); *Rooths*, 802 F. Supp. 2d at 63 (same; court was "not persuaded that the enhanced [*Laffey*] matrix . . . reasonably approximates the rates that are charged in the District of Columbia metropolitan area by lawyers litigating cases under the IDEA"); *McClam v. District of Columbia*, 808 F. Supp. 2d 184, 189-90 (D.D.C. 2011) (awarding lower DCPS guideline rates and noting disagreement within the district court about whether USAO *Laffey* rates apply in IDEA cases but not about whether enhanced *Laffey* rates are appropriate); *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 73-74 (D.D.C. 2011) (finding requested rate, which was less than USAO *Laffey* rate, reasonable in complicated IDEA case); *B.R. v. District of Columbia*, 802 F. Supp. 2d 153, 163 (D.D.C. 2011) (finding requested rate, which fell below USAO *Laffey* rate for attorney's experience, was reasonable); *Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 78-79 (D.D.C. 2012) (applying USAO *Laffey* rates in complicated IDEA case); *see also* Doc. 37 at 5 (citing, *e.g.*, *Gardill v. District of Columbia*, 930 F. Supp. 2d 35, 42-44 (D.D.C. 2013) (entitlement to full USAO

*Laffey* rates demonstrated in only two of 12 cases, remainder were entitled to three-quarters of regular *Laffey*).

Indeed, in her reply regarding fees and costs in the district court, Ms. Eley contended that the majority of courts in this district have applied USAO *Laffey* rates, with a minority applying three-quarters of that rate or DCPS guideline rates, but she did not identify a single court that has awarded enhanced *Laffey* rates in an IDEA case. Doc. 30 at 18-19 (citing, *e.g.*, *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012) (awarding USAO *Laffey* rates, rejecting enhanced *Laffey* rates); *A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 48-49 (D.D.C. 2012) (applying USAO *Laffey* rates in complicated IDEA case); *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 75-76 (D.D.C. 2010) (awarding USAO *Laffey* rates in a complicated IDEA case); *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101-02 (D.D.C. 2010) (applying USAO *Laffey* rates).

Given the large number of IDEA cases in which a significantly lower rate was awarded, the enhanced *Laffey* matrix is not a reasonable measure of prevailing market rates in local IDEA cases. Higher enhanced *Laffey* rates are not required to convince capable counsel to prosecute IDEA cases, and that is the touchstone for determining what rate to use in calculating a fee award. *See Perdue*, 559 U.S. at 552; *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 483 U.S. 711, 731

n.12 (1987) ("An attorney's fee award should be only as large as necessary to attract competent counsel . . . .").[2]

By applying an enhanced *Laffey* rate instead of the prevailing rate in the District for IDEA cases, the district court abused its discretion in setting a fee award. That error requires reversal for entry of an appropriate award.

## B.     The district court's other rationales are unavailing.

The district court improperly rejected the findings of other courts that the enhanced *Laffey* matrix "is only indicative of the prevailing market rates for attorneys engaged in complex federal litigation . . . [in] the big firm context."[3] Doc. 41 at 22 (internal quotation marks omitted). *But see, e.g.*, *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 46-47 (D.D.C. 2011) (finding "that '[t]he market generally accepts higher rates from attorneys at firms with more than 100 lawyers than from those at smaller firms—presumably because of their greater resources

---

[2]     As discussed, IDEA required the district court to look at the rates charged in IDEA cases. It nonetheless bears note that attorneys appointed by the District of Columbia Superior Court to represent indigent clients in Family Court matters are paid at a $90/hour rate, and criminal defense attorneys appointed by the federal district court at a $126/hour rate. Doc. 27 at 13; CJA Appointment Guidelines, Vol. 7, Part A, ch. 2, § 230.16, *available at* http://www.uscourts.gov/FederalCourts /AppointmentOfCounsel/CJAGuidelinesForms/vol7PartA/vol7PartAChapter2.aspx #230_16. These hourly rates provide a stark contrast to the enhanced *Laffey* rates.

[3]     This Court described the matrices it considered in *Covington*, including that upon which the enhanced *Laffey* matrix is based, as "evidence regarding prevailing market rates *for complex federal litigation*." 57 F.3d at 1110 (emphasis added).

and investments, such as attorneys, librarians, researchers, support staff, information technology, and litigation services'" (quoting *Wilcox v. Sisson*, 2006 WL 1443981 at *2 (D.D.C. 2006), and cases cited therein)). The district court found that it would be anomalous to award a large firm that undertook an IDEA case enhanced *Laffey* rates but deny those same rates to a smaller law firm or solo practitioner. Doc. 41 at 23-24. The court's concern, however, does not relate to the central question whether enhanced *Laffey* rates reflect the prevailing community rate for IDEA cases, and therefore whether those rates should be applicable to either a large or small firm that brings a case under IDEA. That is to say, if IDEA cases routinely command a lower *Laffey* rate and still attract competent counsel, then big firms as well as solo practitioners would be entitled only to recover that lower rate.

The district court also found that drawing a distinction between large and small firms "has been explicitly rejected by the Supreme Court and [this Court]." Doc. 41 at 22 (citing *Blum*, 465 U.S. at 889; *Cumberland Mountains*, 857 F.2d at 1524). But those cases do not stand for that proposition. In *Blum*, the Court concluded that fees for salaried legal aid attorneys and other non-profit law firms should not be limited to the cost of providing legal services but, instead, that prevailing market rates should apply. 465 U.S. at 894-95. Based, in part, upon *Blum*, this Court in *Cumberland Mountains* concluded that reduced-profit public

23

interest lawyers should not be limited to the rates they charge but are entitled to prevailing market rates.  857 F.2d at 1524.  Neither the Supreme Court in *Blum* nor this Court in *Cumberland Mountains* required that market rates be exclusively determined by the fees charged by the county's largest law firms—rates that do not always provide a relevant comparison.  Moreover, Ms. Eley's attorney is neither a reduced-profit public interest lawyer nor a legal aid attorney.  And, in any event, she did not submit any evidence that demonstrated that the enhanced *Laffey* rate is the prevailing market rate for IDEA cases, regardless of what type of attorney or law firm brings the case.

In addition, while the court found that it would be unjust not to award enhanced *Laffey* rates when those rates matched Ms. Eley's attorney's customary billing rate (Doc. 41 at 24), a counsel's billing rate is irrelevant where, as here, it is not in line—and, more to the point, not *proven* to be in line—with the prevailing community rate for IDEA cases.  20 U.S.C. § 1415(i)(3)(F)(ii); *see also Blum*, 465 U.S. at 896 n.11; *Covington*, 57 F.3d at 1109.  Similarly, the court's conclusion that the complexity of a case is not determinative of what rate applies obscures the primary issue—whether enhanced *Laffey* rates are in line with those prevailing in the District for IDEA cases.  Doc. 41 at 25-29.

Finally, the district court erroneously discounted the IDEA cases cited by the District because, in its view, those courts improperly applied lower rates based on IDEA litigation being less arduous than complex federal litigation.  Doc. 41 at 29-31.  In the court's view, complexity should be accounted for only in the number of hours claimed and should not be used to reduce the amount of the hourly rate, and thus it concluded that the District had not explained why "litigating federal IDEA cases generally, or this case in particular, should warrant a reduction of twenty-five percent from the prevailing market rate compared to litigating of other civil rights cases with fee-shifting provisions."[4]  Doc. 41 at 33.  But in arguing for a 75 percent USAO *Laffey* rate, the District was not relying on the lack of complexity of IDEA litigation but instead upon the numerous local courts that in IDEA cases had awarded rates equal to or less than that rate and Ms. Eley's failure to introduce countervailing evidence of what the prevailing rate is.  Doc. 27 at 12, 15 (arguing that Ms. Eley "takes no notice of the decisions in this jurisdiction ordering [three-quarters] of the [USAO] *Laffey* rate for work completed in IDEA cases" and

---

[4]     A prior decision by this district court judge observes that the "Supreme Court and the D.C. Circuit have identified the complexity of the litigation as a relevant consideration in awarding reasonable attorney's fees."  *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 246-47 (D.D.C. 2012) (citing and describing *Pennsylvania v. Del. Valley Citizens Council for Clear Air*, 478 U.S. 546, 565 (1986) as "holding that '[t]he novelty [and] complexity of the issues' should be 'fully reflected' in a reasonable fee award" and *Covington*, 57 F.3d at 1108).

therefore her "attorney's rate [does] not accord with prevailing rates in the community"). Regardless of the reasons for those awards, they are the only evidence in this record of prevailing community rates that are tailored to IDEA cases.

Furthermore, there is significant evidence that this litigation involved, as Magistrate Judge Kay found, a "routine administrative hearing and judicial appeal," and not the long-running, discovery-laden, motions-heavy practice so often found in complex federal litigation. Doc. 34 at 10. At the one-day administrative hearing, Ms. Eley called four witnesses and submitted seven exhibits (Doc. 9-6 through 9-10), and in the district court no discovery was conducted and the matter was resolved on cross-motions for summary judgment without any additional evidence being submitted. Doc. 11-13, 15-19. The reduced complexity could serve as a basis for reducing the hourly rate, and not just the total hours billed. *See, e.g.*, *Rooths*, 802 F. Supp. 2d at 62-63 (in IDEA cases that involve simple facts and no novel or complicated questions of law, "a rate considerably below the [USAO] Laffey maximum is appropriate"). In any event, while the district court here may disagree with the reasons why numerous other courts have awarded fees at or below USAO *Laffey* rates those rates, nonetheless, establish the prevailing market rate for District IDEA cases. The district court here had no sound basis in the record to conclude otherwise.

26

## CONCLUSION

This Court should reverse the order of the district court.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

/s/ RICHARD S. LOVE
RICHARD S. LOVE
Senior Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
July 2014                          (202) 724-6635

27

## CERTIFICATE OF SERVICE

I certify that on July 14, 2014, an electronic copy of this brief was served

through the Court's ECF system, to:

Douglas Tyrka
7322 Churchill Rd.
McLean, VA 22101

/s/ RICHARD S. LOVE
RICHARD S. LOVE

## CERTIFICATE OF COMPLIANCE

I further certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains <u>6,442</u> words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman 14 point.

/s/ RICHARD S. LOVE_____
RICHARD S. LOVE
