IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————————————————

**No. 13-7196**

——————————————————

NOT YET SCHEDULED FOR ORAL ARGUMENT

——————————————————

**WILMA ELEY,**
*Plaintiff-Appellee*,

vs.

**THE DISTRICT OF COLUMBIA**
*Defendant-Appellant.*

——————————————————

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

——————————————————

**BRIEF FOR APPELLEE WILMA ELEY**

——————————————————

Douglas Tyrka
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA  22101
(202) 332-0038
tyrka@tyrkalaw.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici.* The plaintiff below and appellee here is Wilma Eley. The defendant below and appellant here is the District of Columbia. There are no amici.

B. *Ruling under review.* The District of Columbia appeals from the November 20, 2013, order of Judge Beryl A. Howell. There is no official citation. The Westlaw citation is 2013 WL 6092502. The Order is item 42 on the docket.

C. *Related cases.* This case has not previously been before any court other than the United States District Court below. There are no related cases before this Court. There are two related cases before the United States District Court for the District of Columbia: 14-CV-0319 (BAH/JMF) and 14-CV-1142 (BAH/JMF).

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES…………………..…………………………1

STATEMENT OF THE CASE...................................................................1

    The Substantive Litigation……………………………………………..1

    The Fees Litigation, Generally…………………………………………3

    The Rate Dispute………………………………………………………4

STANDARD OF REVIEW....................................................................6

SUMMARY OF ARGUMENT............................................................7

ARGUMENT…………………………………………………………....8

I.    THE DISTRICT COURT COMMITTED NO ERROR OF LAW, ON
    WHICH THE PARTIES HAVE ALWAYS AGREED……………….…..8

II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN
    FINDING THAT THE RATES REQUESTED WERE NOT OUT OF LINE
    WITH PREVAILING RATES…………………………………………9

    A.    The Firm's Customary Rates Supported the Finding of Prevailing
        Rates…………………………………………………………10

    B.    Prior Settlements of the Firm's Bills Supported the Finding of
        Prevailing Rates……………………………………..…………14

    C.    The *Laffey* Matrix Supported the Finding of Prevailing Rates…...…15

        1.  The District has not established that this case is dissimilar to others
           in which *Laffey* has been applied…………………………...…15

        2.  The District Court used an appropriately "updated version of the
           *Laffey* matrix."……………………………………...………17

3. Other district court decisions did not prohibit the District Court's use of the *Laffey* matrix in this case……………………...……19

a. This Court should not consider the District's argument that the cited decisions establish the prevailing rate because the District did not make that argument to the District Court……………19

b. Decisions of the district court do not establish the market or otherwise control…………………………………..……22

D. Fees in Line with the District's Proposals Do Not Attract Competent Counsel…………………………………………………………24

CONCLUSION…………………………………………………………...25

# TABLE OF AUTHORITIES

## Cases

*Adolph Coors Co. v. Truck Ins. Exchange*, 383 F.Supp. 2d 93 (D.D.C. 2005)……11

*Allen v. Utley*, 129 F.R.D. 1 (D.D.C. 1990)…………………………………………11

*Carr v. D.C.*, 543 F.2d 917 (D.C. Cir. 1976)……………………………………...21

*Clay v. D.C.,* CV 09-1612 BAH/DAR, 2014 WL 322017

(D.D.C. Jan. 28, 2014)……………………………………………………………12

*Cobell v. Norton*, 231 F.Supp. 2d 295 (D.D.C. 2002)……………………………..11

*Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980)……………………………..6

*\*Covington v. Dist. of Columbia*, 57 F.3d 1101

(D.C. Cir. 1995)………….…………………………………...6, 8, 9, 12, 15-18, 22, 23

*D.C. v. Air Florida, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984)………………………..20

*Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710 (D.C. Cir. 1986)………………...21

*Flynn v. Dick Corp.*, 624 F. Supp. 2d 125 (D.D.C. 2009)………………………...11

*Fox v. Vice*, 131 S. Ct. 2205 (2011)……………………………………………16

*Gilson v. Republic of Ireland*, 787 F.2d 655 (D.C. Cir. 1986)……………………21

*Griffin v. Wash. Convention Ctr.*, 172 F.Supp. 2d 193 (D.D.C. 2001)……………11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)……………………………………6, 16

*\*Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274 (D.C. Cir. 1993)…..6, 9, 10

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)…………….4, 15

iv

*Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984)…………………...10

*Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268

(6th Cir. 1983)……………………………………………………………………….11

*Murray v. Weinberger*, 741 F.2d 1423 (D.C. Cir. 1984)…………………11, 12, 23

*\*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319

(D.C. Cir. 1982)…………………………………………………………..9-11, 13, 14, 23

*Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597 (D.C. Cir. 1998)……….20-21

*Pawlak v. Greenawalt,* 713 F.2d 972 (3d Cir.1983)………………………………11

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)…………………………...16

*Potter v. D.C.*, 558 F.3d 542 (D.C. Cir. 2009)…………………………………20

*Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992)…...20

*\*Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516

(D.C. Cir. 1988)…………………………………………………......10, 15-17, 23

*Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244 (D.C. Cir. 2007)……………..11, 23

*Thomas v. D.C.*, 908 F. Supp. 2d 233 (D.D.C. 2012)……………………………..24

*Wilcox v. Sisson*, No. 02-1455, 2006 WL 1443981 (D.D.C. May 25, 2006)……...11

*Wilkett v. I.C.C.*, 844 F.2d 867 (D.C. Cir. 1988)………………………………15-16

---

\* Authority upon which Ms. Eley chiefly relies.

## <u>Statutes and Regulations</u>

20 U.S.C. § 1400, *et seq*……………………………………………………………1

20 U.S.C. § 1415(i)(3)(B)……………………………………………………..3, 6

## GLOSSARY

IDEA               Individuals with Disabilities Education Act

DCPS               District of Columbia Public Schools

USAO               District of Columbia United States Attorney's Office

Br.                Appellant's brief

## STATEMENT OF THE ISSUES

1.      Whether the District Court's finding of prevailing hourly rates, based upon an updated "*Laffey* matrix," evidence of the firm's customary rates, and other evidence, exhibits a clear misapplication of legal principles, arbitrary fact finding, or an unprincipled disregard for the record evidence.

## STATEMENT OF THE CASE

Appellee Wilma Eley proved that the District of Columbia Public Schools ("DCPS") had denied her child a free appropriate public education according to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., by failing to provide him with any school at all. *See* Doc. 20-22. Ms. Eley then moved for attorneys' fees under that statute. Doc. 26.

After extensive argument, in a deeply researched and very detailed opinion dedicated primarily to the question of hourly rate, the District Court awarded Ms. Eley her requested fees. Doc. 41. On appeal, the District of Columbia has challenged only the District Court's determination of the hourly rate, and has otherwise correctness of the District Court's decision. Br. at 1.


The Substantive Litigation

On September 13, 2010, Ms. Eley filed an administrative due process complaint regarding DCPS's failure to provide her minor son a free appropriate

1

public education in accordance with the IDEA, most notably its complete failure to provide her son any school at all. Doc. 9-3 at 120-21. Ms. Eley requested, among other things, a finding that DCPS had failed to provide an appropriate special education placement, reimbursement for tuition expenses to date, and placement at a private school. *Id.*

After pre-hearing briefing and a hearing on the record, on November 10, 2010, the assigned hearing officer issued a decision denying all relief. Doc. 9-1. Ms. Eley filed this suit challenging that decision on February 7, 2011. Doc 1. On August 24, 2012, this Court issued its substantive judgment, accepting the unchallenged recommendations of a magistrate judge and granting partial summary judgment for Ms. Eley. Doc. 21-22. The Court overturned all of the hearing officer's rulings against Ms. Eley, remanded the case for the resolution of the tuition reimbursement, and held that a placement order was premature because the child's needs had likely changed during the two years of litigation, and so needed to be reconsidered. *See* Doc. 20-22.

After the hearing on remand, the assigned hearing officer ordered payment to Ms. Eley of all tuition reimbursement sought. Doc. 26-8.

The Fee Litigation, Generally

Ms. Eley timely moved for $62,225.00 in attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B), the IDEA's "fee-shifting" provision. Doc. 26. The District contested the reasonableness of some of the work, the court's authority to compensate for some of the work, and the hourly rate requested, and proposed that the court award $749.25 instead. *See* Doc. 27.

The District Court referred the fee issue to a magistrate judge, who issued his Report and Recommendation in August 2013, recommending $39,055.03 in fees and costs. Doc. 34. Both parties timely filed objections to the Report and Recommendation. Doc. 35-36. Ms. Eley objected to the hourly rate applied by the Magistrate Judge and to some relatively minor cuts in the hours. *See* Doc. 35. The District objected to the majority of the hours credited and contested the constitutionality of any award of fees for work spent obtaining fees; the District proposed total fees of $2,900.62. *See* Doc. 36.

After full briefing, in a 42-page opinion the District Court held the full fee award constitutional and awarded the full amount sought by Ms. Eley. Doc. 41-42. The District filed this appeal.

On appeal, the District has abandoned its other arguments, and now challenges only the hourly rate applied by the District Court. Br. at 1.

The Rate Dispute

In the dispute over the hourly rate before the District Court, the parties and the District Court agreed that Ms. Eley bore the burden of submitting evidence of her attorney's billing practices, his skill, experience, and reputation, and the prevailing market rates in the relevant community. *See* Doc. 26 at 3-4; Doc. 36 at 5; Doc. 41 at 5. The parties and the District Court agreed that once Ms. Eley had done so, the District would bear the burden to provide specific contrary evidence in support of a lower rate. *See* Doc. 26-4; Doc. 27 at 2-3; Doc. 41 at 28.

To meet her burden, Ms. Eley submitted a verified statement from her attorney, past settlement agreements regarding her attorney's bills, a version of what is commonly known as "the *Laffey* matrix," and an expert witness statement explaining the matrix. Doc. 26-3-7; Doc. 30-2.[1]  The verified statement detailed the attorney's billing practices in general and in this case, the rates customarily charged by the firm, the history of fee settlements with the District, and the attorney's skill and experience. Doc. 26-3. Ms. Eley also cited to the factual findings in an earlier case "reviewing DCPS payment practices and their impact on parent attorneys." Doc. 30 at 11, 19.

---

[1] S*ee Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983) ("*Laffey I*") *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

The District provided no "specific contrary evidence" contesting anything in the verified statement, the expert statement, or the matrix. The District argued that the verified statement was unreliable, that the settlements were misleading, and that the *Laffey* matrix was inapplicable to this case. Doc. 37 at 2-6.

The District Court devoted 23 pages of its opinion to a discussion of reasonable hourly rates. *See* Doc. 41 at 11-34. The District Court considered the evidence presented by the parties as well as public economic data and published data regarding prevailing rates. *See id.*

The District Court rejected the District's "perfunctory challenge" to the verified statement. *Id.* at 12-13. The Court then determined that Ms. Eley had presented an appropriately updated version of the *Laffey* matrix. *Id.* at 14-25. Finally, the District Court determined that the *Laffey* matrix adequately approximated the prevailing rates in the community for work like that performed by Ms. Eley's attorney. *Id.* at 25-34. The District Court therefore awarded fees according to those rates.

## STANDARD OF REVIEW

This Court reviews the District Court's award of fees for abuse of discretion. *See* 20 U.S.C. §1415(i)(3)(B)(i) (court may award fees "in its discretion"); *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C. Cir. 1980) (*en banc*) ("It is common learning that an attorney's fee award by the District Court will be upset on appeal only if it represents an abuse of discretion.").

More specifically, "[a] district court's discretion as to the proper hourly rate to award counsel should not be upset absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence." *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

 "This limited standard of review is 'appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

## SUMMARY OF ARGUMENT

This Court reviews a fee determination with great deference. In this case, the parties agreed on the applicable legal standard and the District presented no evidence to contravene Ms. Eley's evidence, so the only argument available to the District is the claims that the District Court engaged in arbitrary fact finding.

Even a cursory read of the District Court's opinion reveals the thorough consideration the Court gave this case. The District challenges only one of the Court's many findings and rulings, the finding that the requested hourly rates were not out of line with prevailing rates.

That finding was not arbitrary, but carefully considered and discussed over more than 20 pages. The District Court based the finding on types of evidence repeatedly approved by this Court, primarily an updated version of the *Laffey* matrix and the firm's customary rates.

In its argument to this Court, after necessarily acknowledging that this Court reviews the District Court's decision for abuse of discretion, the District nonetheless proceeds as if it is presenting its argument to a district court considering the case *de novo*. Even in that context, the District offers little. One can fairly summarize almost the entirety of the District's brief with one sentence: "no district judge has given these rates in an IDEA case before, and some other district judges disagree with this Judge."

7

Reasonable people can disagree with the District Court's finding that the *Laffey* matrix, combined with the evidence of Ms. Eley's attorney's customary rates, sufficiently established the prevailing rate. But a basis for argument is not a basis for reversal.

To prevail on appeal, the District must convince this Court not that some other judge might have made different finding of the facts, but that the District Court arbitrarily found the facts. The District has given no reason to conclude that the District Court abused its discretion in that way.

## ARGUMENT

## I.      THE DISTRICT COURT COMMITTED NO ERROR OF LAW, ON WHICH THE PARTIES HAVE ALWAYS AGREED

In its presentation of the issues, the District suggests that it has some claim of an error of law, but in the brief itself the District contests no legal conclusion of the District Court. The District contests only one factual finding, that the hourly rate sought by Ms. Eley was not out of line with prevailing rates in the community. Br. at 12-13.

The District Court applied the exact legal analysis proposed by the District. The District Court required Ms. Eley to carry the burden of submitting evidence of "'the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" Doc. 41 at 5; *quoting Covington*, 57 F.3d at 1107; Br. at 14-15; Doc. 36 at 5.

Similarly, the District has never denied that, once Ms. Eley made her *prima facie* case, the burden shifted to the District to "to provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F. 3d at 1109–10 (*quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982) ("*Concerned Veterans*"); *see* Br. at 15 (*citing Covington,* 57 F. 3d at 1109–10.[2]

Because the District cites no legal error, this Court reviews the District Court's decision for abuse of discretion. More specifically, regarding this question of hourly rate, this Court does not overturn a district court's findings absent "arbitrary fact finding, or unprincipled disregard for the record evidence." *Kattan*, 995 F.2d at 278.

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THE RATES REQUESTED WERE NOT OUT OF LINE WITH PREVAILING RATES

As reviewed above, the District points to no "clear misapplication of legal principles." *Kattan*, 995 F.2d at 278. The District points to no record evidence overlooked by the District Court, with "unprincipled disregard" or otherwise, because the District presented none of the "specific contrary evidence" required by *Covington*. 57 F. 3d at 1109–10. The District must therefore convince this Court

---

[2] The District does not now suggest that it provided such evidence; it only argues that Ms. Eley failed to carry her burden.

that the District Court engaged in "arbitrary fact finding" when it found that Ms. Eley had adequately established prevailing market rates. *Kattan*, 995 F.2d at 278.

The District Court devoted 23 pages of the 42-page opinion to its analysis of the appropriate hourly rate for this case. Doc. 41 at 11-34. The large majority of those 23 pages concern the question of prevailing market rates. *See id.* In those 23 pages, the District Court very carefully considered whether the *Laffey* matrix could be used as a measure of prevailing rates for this case, the question on which the District focuses. *See id.*

The District Court did not arbitrarily find the prevailing rate. As reviewed below, the District Court based its finding upon a deep and broad evidentiary foundation.

### A. The Firm's Customary Rates Supported the Finding of Prevailing Rates.

"The best evidence [of market rates] would be the hourly rate customarily charged by the affiant himself or by his law firm." *Concerned Veterans*, 675 F.2d at 1325.

*"In almost every case, the firm's established billing rates will provide fair compensation." Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984) ("*Laffey II*"), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) ("*SOCM*") (emphasis in

original);[3] *see also Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1254 (D.C. Cir. 2007) (using customary rates to establish reasonable rates); *Murray v. Weinberger*, 741 F.2d 1423, 1428 footnote 21 (D.C. Cir. 1984) (overturning district court for other reasons, but approving use of customary rate to determine market rate); *Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983) ("[T]he value of an attorney's services is generally measured by his billing rate." (citation omitted)), *cert. denied,* 464 U.S. 1042 (1984); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983) ("The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney.") (internal quotation omitted).[4]

---

[3] *SOCM* overruled the *Laffey* holding that an attorney who performed some public interest work at a reduced rate would only be compensated at that reduced rate, rather than the attorney's typical rate. *SOCM* did not criticize the general principle that an attorney's customary rate should be used to establish the market rate for services.

[4] *See also Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 131 (D.D.C. 2009) (quoting *Concerned Veterans* and relying heavily on customary rates); *Wilcox v. Sisson*, No. 02-1455, 2006 WL 1443981, *2 (D.D.C. May 25, 2006) ("The rates charged by counsel for the winning party are presumptively reasonable if they are the same rates that counsel customarily charge other fee-paying clients for similar work."); *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F. Supp. 2d 93, 98 (D.D.C. 2005) ("the most fundamental economic analysis indicates that, all things considered, the rate that [a firm] charges its clients is the market rate"); *Cobell v. Norton*, 231 F. Supp. 2d 295, 302-03 (D.D.C. 2002) ("'There is no better indication of what the market will bear than what the lawyer in fact charges for his services and what his clients pay.'") (*quoting Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001); *Allen v. Utley*, 129 F.R.D. 1, 7 (D.D.C. 1990) ("when an attorney

Ms. Eley established her attorney's customary rate with the usual evidence, a verified statement from the attorney. Doc. 26-3. Specifically, Ms. Eley established that the firm had regular paying clients, all of whom had always paid hourly rates exactly matching those of the version of the *Laffey* matrix provided to the District Court. *See id.*

The District produced no contrary evidence, but instead falsely stated that Ms. Eley had "admit[ted] that her attorney ha[d] only one paying client – the District of Columbia." Doc. 37 at 3. *See* Doc. 41 at 12-13 (noting that the District "'appear[ed] to be arguing a different case, discussing a different law firm at length and defending itself against an argument that Ms. Eley [] never made'").

The District also suggested, as it does here, that this statement under oath, uncontested, should be discounted or ignored as "unsupported and conclusory." Br. at 16. A statement from counsel is not only admissible in a fee dispute, but necessary to the moving party's case. *See Murray,* 741 F.2d 1433 (referring to attorney affidavit for customary rates); *Covington*, 57 F.3d at 1107 (fee applicant

---

has a customary billing rate, that rate is the presumptively reasonable rate to be used in computing a fee award"); *compare Clay v. D.C.,* CV 09-1612 BAH/DAR, 2014 WL 322017, *6 footnote 5 (D.D.C. Jan. 28, 2014) (distinguishing case from this case and others because the plaintiff had not established the firm's customary rate).

must establish, among other things, the attorneys' billing practices).[5] An affidavit is exactly the evidence of customary rates contemplated by this Court when the Court has endorsed their use. *See Concerned Veterans,* 675 F.2d at 1325 (referring to "the hourly rate customarily charged by the affiant").

The District now also complains, for the first time,[6] that the verified statement does not indicate "whether the enhanced *Laffey* rate is the standard rate for the firm's paying clients, or an outlier." Br. at 17 (suggesting that Ms. Eley used "careful phrasing" to obfuscate). To the contrary, the statement explicitly states that the firm "has always matched" its rates to the *Laffey* matrix. Doc. 26-3 at ¶ 7. In the same sentence quoted by the District, it is stated that "[f]rom its origin, [the firm] has always exclusively charged rates matching" the matrix. Doc. 26-3 at ¶ 9.

The District Court's finding regarding prevailing rates was supported by "[t]he best evidence" of the market, "the hourly rate customarily charged by the affiant." *Concerned Veterans,* 675 F.2d at 1325.

---

[5] Though the Court did not mention it, one would assume that the applicant must establish by affidavit that the work itemized was performed and various other basic facts.

[6] This Court will normally not consider arguments, including proposed interpretations of evidence, never presented to the court below. *See* Argument II.C.3.a., below.

**B.      Prior Settlements of the Firm's Bills Supported the Finding of Prevailing Rates.**

This Court has recognized settlements as valid evidence of market rates. *See Concerned Veterans*, 675 F.2d at 1325 ("Recent fees awarded… through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate."). Though the District Court did not explicitly rely on it, Ms. Eley presented evidence of DCPS's settlement and payment of the firm's bills in other cases. Doc. 30-2; *see* Doc. 26-3 at ¶ 11.

The District continues to argue that the fee cap that existed at the time of these settlements made the hourly rate irrelevant, but Ms. Eley disproved that speculation before the District Court. *See* Doc 26-3 at ¶ 11 (stating percentage paid "after applying the fee cap"); *see* Doc. 30 at 14-15; Doc. 39 at 1. As reviewed in Ms. Eley's prior filing, though most of the settled bills in the settlement exhibit exceeded the $4,000 fee cap, several did not. *See* Doc. 30-2. If, in accordance with the fee cap, one counts each bill over $4,000 as $4,000 and counts the other bills exactly as shown, the total of the bills is $90,012.69. *See id.* The District paid $90,000.00 in settlement of that $90,012.69. *See id.* That is, the District paid 99.9% of bills based on the *Laffey* matrix updated with the exact method used by the District Court, even where the fee cap was not a factor.

14

**C.     The *Laffey* Matrix Supported the Finding of Prevailing Rates.**

"In order to demonstrate [prevailing community rates], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Covington*, 57 F.3d at 1109; *see Laffey I,* 572 F. Supp. at 371; *see also SOCM*, 857 F.2d at 1525 ("commend[ing]" the use of the *Laffey* matrix).

1. <u>The District has not established that this case is dissimilar to others in which *Laffey* has been applied.</u>

In its brief the District argues that District Court should not have made any use of the *Laffey* matrix because Ms. Eley was required to establish rates in the community very specifically for "IDEA cases, not Medicaid cases or environmental cases." Br. at 19. The District cites no support for that contention. This Court has already explicitly rejected the argument that "the court should define the relevant market, for purposes of determining the prevailing market rates, narrowly, as including only plaintiff attorneys in civil rights, employment, or discrimination actions." *Covington*, 57 F.3d at 1111.

*Laffey* itself was an employment discrimination case. *See Laffey I,* 572 F. Supp. 354. Nonetheless, this Court has not hesitated to apply it to cases brought under the Equal Access to Justice Act, section 1988, and the Surface Mining Control and Reclamation Act, without requiring that the plaintiffs in those cases establish the market rates for work in those particular areas of law. *See Wilkett v.*

15

*I.C.C.*, 844 F.2d 867 (D.C. Cir. 1988)*; Covington*, 57 F.3d 1101; *SOCM*, 857 F.2d at 1517.

In the District's view, a plaintiff apparently must conduct a new survey in each very specific field. As is often observed, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437. A court considering fees should use the lodestar method to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis in original); *see Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice[.]").

The District could theoretically have established before the District Court that IDEA cases are categorically dissimilar to other cases, or that this particular case was dissimilar, but the District makes no serious argument for either position. To the contrary, the District clarifies that it has "not rel[ied] on the lack of complexity of IDEA litigation."[7] Br. at 25.

---

[7] Before the District Court, Ms. Eley did establish that this case happened to be unusually complex, because of the unusual and extensive disabilities of the student, the relief sought, the briefing required at the administrative level, the need to address what the Hearing Officer had deemed a novel argument, the expert testimony needed, and the multi-step litigation following the first administrative decision, the majority of which was at the district court. *See* Doc. 35 at 5-6.

Though the District made no case for its position before the District Court, the District apparently disagrees with the District Court that the work in this case was sufficiently similar to other work. The District now asks this Court to join in that disagreement. The question, though, is not whether the District or even this Court agrees with the District Court; the question is whether the District Court acted arbitrarily or with an unprincipled disregard of the evidence. It did not.

> 2.  The District Court used an appropriately "updated version of the *Laffey* matrix."

Having been given no reason not to apply the *Laffey* matrix along with the other evidence, the Court necessarily updated the original matrix to current rates. *See Covington*, 57 F.3d at 1109 ("such evidence as an updated version of the *Laffey* matrix"); *SOCM*, 857 F.2d at 1525 ("commend[ing]" use of *Laffey* matrix, but only "for the year to which it applies" and encouraging development of "a similar schedule of prevailing community rates for other relevant years").

In its brief, the District does not question the need for a current matrix, if one is used. Neither does the District specifically criticize the way in which the District Court determined the appropriate matrix.

Nonetheless, the District repeatedly, inexplicably refers to the matrix used by the District Court as "enhanced." In fact, the District goes so far as to add the phrase "enhanced *Laffey*" to a direct quote from the District Court, when the Court

17

had actually referred to "some version of the *Laffey* matrix." *Compare* Br. at 11 *with* Doc. 41 at 29.

In the absence of any explanation of that term, one can only conclude that the District refers to the fact that the matrix contains rates higher than those in the matrix published by the District of Columbia U.S. Attorney's Office ("USAO matrix"). *See* Doc. 41 at 14, footnote 4 (addressing Magistrate Judge's similar use "elevated"). That is, the District means to suggest that the USAO matrix is the one true *Laffey* matrix and that any other version is deformed.

The District may have had some success over the years in promoting in the district court and elsewhere a misunderstanding of the USAO matrix as "the *Laffey* matrix" and other versions of the matrix as "enhanced," but this Court has rejected that view and suggested the opposite. When the Court approved the use of a matrix in *Covington*, the Court referred to two distinct types of matrix, "an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix." 57 F.3d at 1109.

Though the District has not presented any argument, much less evidence, against the District Court's method for updating the *Laffey* matrix, it is worth noting that the District Court's fact finding on this point was well-founded and carefully considered. In 12 pages of analysis, the District Court reviewed this Court's decisions regarding matrices, the histories of the different matrices (or versions of the matrix), the uncontested expert opinion in the record, public

economic data, and published data regarding market rates. *See* Doc. 41 at 14-25.

Having considered all of that information, the Judge exercised her discretion and

determined the current matrix rates based on that evidence.

The District makes much of the fact that this version of the *Laffey* matrix has

never been applied in an IDEA fee case before. That fact alone does not make the

District Court's findings arbitrary or even erroneous. *See* Argument II.C.1., above.

The District, unsupported by any economist, may favor a different method

for adjusting the *Laffey* matrix, but that does not mean that the District Court

"enhanced" anything. The District Court relied on unrebutted expert testimony, the

reasoning in other decisions, and the Court's own careful analysis to adjust the

matrix for inflation, as every court should do.

    3.  <u>Other district court decisions did not prohibit the District Court's</u>
        <u>use of the *Laffey* matrix in this case.</u>

        a.  *This Court should not consider the District's argument that the*
            *cited decisions establish the prevailing rate because the District*
            *did not make that argument to the District Court.*

The District criticizes the District Court for failing to "address[] why the

rates in [cited] cases do not establish the prevailing local rate for IDEA cases." Br.

at 19; *see* Br. at 18-22. The District Court did not address this argument because

the District never made it. In almost 60 pages of argument to the District Court,

though the District cited decisions in support of its position, the District never

offered those decisions as evidence of prevailing rates or suggested any similar theory. *See* Doc. 27, 36, 37, 40.

"It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *D.C. v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). The Court considers such issues only in "exceptional circumstances," including uncertainty in the law; "a novel, important and recurring question of federal law;" "an intervening change in the law;" and when "necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process." *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 419 footnote 5 (D.C. Cir. 1992).

Though the Court most commonly applies this principal to reject entirely new claims or defenses, the Court has also consistently applied it to questions of the consideration or interpretation of evidence. For example, in *Potter v. D.C.*, the Court refused to consider several pieces of evidence which, while present in the record, had never been referenced.

> As regards other evidence referenced by the District of Columbia on appeal, it was not cited in opposing the firefighters' motion for summary judgment….None of the District of Columbia's pleadings or oral argument in the district court cited this testimony…The District of Columbia bore the burden of pointing to evidence that could create an issue of material fact.

558 F.3d 542, 549-51 (D.C. Cir. 2009); *see also Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 606-07 (D.C. Cir. 1998) (in fee dispute, refusing to consider

20

fact that plaintiff was represented *pro bono* because defendant "'did not squarely raise this argument below'"); *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 718-19 (D.C. Cir. 1986) (refusing to consider condition precedent in contract that had not been emphasized before district court); *Gilson v. Republic of Ireland*, 787 F.2d 655, 659 (D.C. Cir. 1986) (refusing to consider document not in the record before the district court when it acted, even though the district court had since reopened the record to allow the document in); *Carr v. D.C.*, 543 F.2d 917, 921-22 (D.C. Cir. 1976) (rejecting evidence regarding property ownership that had not been presented to district court).

Before the District Court, the District cited to several district court decisions as persuasive precedent and the District Court properly addressed them as such. *See* Doc. 41 at 29-31. The District Court had no cause to consider those decisions as part – or the entirety – of the market themselves, as the District now argues, because the District never presented the cases in that way. *See* Doc. 27, 36, 37, 40.

Because the District never advanced the theory that the decisions constitute the market or otherwise presented this purported evidence of prevailing rates, and because the District cannot point to any exceptional circumstances, the Court should not hear this new theory on appeal and should not consider the decisions as evidence of anything but other judges' reasoning in other cases.

b. *Decisions of the district court do not establish the market or otherwise control.*

The District asks this Court to overturn the District Court's findings on the basis of other district court decisions "[r]egardless of the reasons for those awards." Br. at 26. The District contends that those decisions "are the only evidence in this record of prevailing community rates that are tailored to IDEA cases." *Id.*

As addressed above, the District begs the question of whether evidence of prevailing rates must be specific to IDEA cases. *See* Argument II.C.1. As reviewed above, the District presents no support for that idea, which runs counter the precedent of this Court. *See id.*

Regardless, the cited decisions are not evidence of any kind of market rate. Judicial decisions are not evidence, certainly not of free market activity.[8] No district judge in any fee decision was a consumer of legal services participating in the establishment of market prices. Exercising his or her broad discretion, each judge made an approximate finding, on the evidence in each case, regarding the preexisting market for the particular services from the particular lawyer in that

---

[8] In *Covington*, this Court did note that a plaintiff, acting from the "useful starting point" of a matrix, "may" use "evidence of recent fees awarded by the courts," among other things. 57 F.3d at 1109. The Court did not state or suggest that such awards were themselves evidence of prevailing market rates. Moreover, the Court did not state or suggest that a district judge must follow other district court decisions, as the District argues here.

22

case. Actual evidence of market rates includes the attorney's customary rate

obtained on the market, past settlements where available, and "such evidence as an

updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix."

*Covington*, 57 F.3d at 1109; *see Kagy*, 473 F.3d at 1254 (using customary rates to

establish reasonable rates); *Murray*, 741 F.2d at 1428 footnote 21 (approving use

of customary rate to determine market rate); *Concerned Veterans*, 675 F.2d at 1325

(settlements are "useful guides"); *SOCM*, 857 F.2d at 1525 ("commend[ing]" the

use of the *Laffey* matrix).

The District's argument appears to be pretext for its actual proposition, that

the District Court should have blindly followed the district court decisions cited

and that this Court should now do so, "[r]egardless of the reasons for those

awards." Br. at 26. The District Judge reviewed those other decisions, not

"[r]egardless of the reasons for those awards" as proposed by the District but with

a careful analysis of the reasoning, and decided that rates matching the *Laffey*

matrix were appropriate in this case. [9]

---

[9] It may be worth noting that almost half of the cases cited by the District, and the large majority of the cases awarding only 75% of USAO rates, consists of 18 virtually identical decisions issued by Magistrate Judge Kay in 2011 and 2012 regarding 18 cases that were brought and litigated simultaneously, though not technically joined. *See Gorman v. Dist. of Columbia*, CIV.A. 011-150 AK, 2012 WL 1438977 at *1 and footnote 1 (D.D.C. Apr. 26, 2012); Doc. 30 at 16-17. That is, the texts of the 18 decisions are identical except for party names, exact dollar figures, and similar details.

In that way, this Judge carefully exercised her own discretion. The District Court considered every piece of evidence presented – even if the other decisions are considered "evidence" as the District contends – and carefully and conscientiously reasoned through a decision. To do as the District now proposes the Judge should have done – to blindly follow those decisions – would be to engage in exactly the arbitrary fact finding that would constitute an actual abuse of discretion.

**D.     Fees in Line with the District's Proposals Do Not Attract Competent Counsel.**

The District argues that rates higher than those proposed by the District –$90 per hour, in this case – are unnecessary to attract competent counsel. It has already been established in litigation against the District that, rather than attracting counsel, the District's payment systems have destroyed or crippled special education firms. *See Thomas v. D.C.*, 908 F. Supp. 2d 233, 245-46 (D.D.C. 2012) *appeal dismissed,* 13-7010, 2013 WL 1187428 (D.C. Cir. Mar. 14, 2013) (reviewing uncontested evidence of "disgraceful state of affairs" resulting from DCPS payment practices); *cited in* Doc. 30 at 11, 19.

Moreover, the District does not contend that the one sentence in *Perdue* regarding attracting counsel supersedes the methodology long endorsed by this Court, which methodology continues to ensure that trial courts can determine appropriate rates in a systematic and consistent manner. The District Court applied

24

that specific methodology to approximate prevailing rates without engaging in any arbitrary fact finding or otherwise abusing its broad discretion.

## CONCLUSION

The District Court did not arbitrarily find the fact challenged by the District. The District Court based the finding on exactly the types of evidence approved by this Court, and considered the finding very carefully. The District Court did not abuse its discretion in any way.

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA  22101
(ph) (202) 332-0038
(f) (202) 332-0039
tyrka@tyrkalaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 5,792 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman 14 point.

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2014, a copy of this brief was served via the Court's electronic service on

Richard S. Love
Senior Assistant Attorney General
Office of the Solicitor General
Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka